Santos Higinio
**RAMIREZ–RAMOS, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 86–7163.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1986.

Decided April 15, 1987.

---

David F. Mainland, San Francisco, Cal., for petitioner.

Joe Ciolino, Washington, D.C., for respondent.

Before TANG, SCHROEDER and NORRIS, Circuit Judges.

TANG, Circuit Judge:

Ramirez-Ramos petitions for review of the Bureau of Immigration Appeals' (BIA or Board) dismissal of his appeal from the Immigration Judge's (IJ) denial of his application for withholding of deportation pursuant to 8 U.S.C. § 1253(h). As an ex-union leader and activist in anti-government organizations in El Salvador, Ramirez argues he has shown a clear probability of persecution on account of his political opinions and affiliations. The BIA denied his application because his California state court conviction of selling heroin rendered him statutorily ineligible for the relief sought. 8 U.S.C. § 1253(h)(2)(B). We deny the petition for review.

## BACKGROUND

Ramirez, a native and citizen of El Salvador, entered the United States without inspection on September 19, 1983. On January 9, 1985, he was convicted in the Superior Court of the State of California for the County of San Francisco on a charge of selling heroin in violation of Cal. Health & Safety Code § 11352. He was sentenced to one year of probation on the condition that he serve one year in the county jail. Ramirez served eight months of that term of incarceration. The California Court of Appeals affirmed his conviction on January 9, 1986, and on March 18, 1986, the California Supreme Court denied his petition for review.

The Immigration and Naturalization Service (INS) commenced deportation proceedings against Ramirez by the issuance of an order to show cause dated June 17, 1985, charging that he was deportable pursuant to 8 U.S.C. § 1251(a)(11), in light of his conviction for selling heroin. On August 21, 1985, INS lodged an additional charge of deportability, alleging that Ramirez was deportable pursuant to 8 U.S.C. § 1251(a)(2), for entering the United States without inspection. At his August 28, 1985 deportation hearing, Ramirez admitted the allegations in the order to show cause relative to the charge of entry without inspection and conceded his deportability on that ground. He declined to designate the

country of deportation, whereupon the IJ designated El Salvador. The IJ continued the case for a hearing on the merits of Ramirez's applications for asylum, withholding of deportation and voluntary departure and held that hearing on November 26, 1985.

In a decision dated December 6, 1985, the IJ found Ramirez to be deportable on the ground of entry without inspection, and denied his applications for asylum, withholding of deportation and voluntary departure. The IJ rejected Ramirez's asylum and withholding applications because he did not believe Ramirez had established a well-founded fear or a clear probability of persecution. The IJ found Ramirez to be statutorily ineligible for voluntary departure because he could not as a matter of law establish the good moral character required by 8 U.S.C. § 1254(e) since he had served more than 180 days in jail as the result of a conviction. *See* 8 U.S.C. § 1101(f)(7). The IJ further stated that he would, in any event, deny voluntary departure as a matter of discretion due to the serious nature of petitioner's conviction.

The BIA dismissed Ramirez's appeal in a decision dated March 20, 1986. The Board upheld the IJ's finding of deportability, and then turned to consideration of Ramirez's various requests for relief. As to voluntary departure, the Board, citing 8 U.S.C. §§ 1101(f)(3), (8) and 1182(a)(23), found that Ramirez was statutorily barred from establishing good moral character because of his narcotics conviction and subsequent confinement.

As to asylum and withholding, the Board noted that pending the appeal, Ramirez's conviction for selling heroin had been affirmed by the California Court of Appeals and was thus final for immigration purposes. The Board found that the alien's heroin trafficking conviction made him statutorily ineligible for withholding of deportation under section 243(h)(2)(B) of the Refugee Act of 1980, 8 U.S.C. § 1253(h)(2)(B), and warranted a determination that he would not merit a discretionary grant of asylum, even if eligible. The

Board rejected Ramirez's arguments that: (1) section 243(h)(2)(B) requires two separate and distinct findings that he had committed a particularly serious crime *and* that he constituted a danger to the community of the United States; and (2) in determining the seriousness of a crime under section 243(h)(2)(B), the degree of persecution threatened must be considered.

## ANALYSIS

Ramirez's petition does not require that we consider the merits of his applications for asylum, withholding of deportation or voluntary departure. We must determine only whether the BIA's interpretation of section 243(h)(2)(B) of the Refugee Act of 1980, 8 U.S.C. § 1253(h)(2)(B), is reasonable, and whether that provision has been properly applied to deny Ramirez relief from deportation. We review these questions of law *de novo* but with deference to the BIA's interpretation of the statute. *Mahini v. INS*, 779 F.2d 1419, 1420 (9th Cir.1986). Ramirez argues that the BIA erred in failing to see that the statute requires a two step determination of (1) conviction of a particularly serious crime and (2) future dangerousness to the community. Ramirez also contends that section 243(h)(2)(B) requires the BIA to weigh the seriousness of the crime of which an alien is convicted against the degree of persecution he is likely to suffer in determining his eligibility for relief. We address each argument in turn.[1]

### A. *Two Step Finding*

Section 243(h)(2)(B) enumerates one of the exceptions to withholding of deportation relief. While withholding is available to an alien whose life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, 8 U.S.C. § 1253(h)(1), the relief is not available:

(2) ... to any alien if the Attorney General determines that—

---

1. Ramirez's third argument on appeal, that the IJ erred in refusing to hear testimony from an expert on conditions in El Salvador, is irrele-

vant in light of our holding on his primary statutory arguments.

(B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States.

8 U.S.C. § 1253(h)(2)(B).

There is no question that this circuit has ratified the BIA's consistent view that convictions for drug possession and trafficking are particularly serious within the meaning of section 243(h)(2)(B). *Mahini*, 779 F.2d at 1421. Ramirez argues that the BIA must make an additional, separate finding that the alien with such a drug conviction constitutes a danger to the community. He argues that two findings are mandated by the language of the statute and by our decision in *Mahini*.

The BIA found that there is no "statutory requirement for a separate determination of dangerousness focusing on the likelihood of future serious misconduct on the part of the alien." The BIA then held "[w]e have little difficulty concluding that the applicant herein has been convicted of a particularly serious crime and, therefore, constitutes a danger to the community of the United States within the meaning of section 243(h)(2)(B) of the Act."

A close reading of the language of the statute leads us to the conclusion that the BIA's interpretation is reasonable. The participial phrase, "having been convicted by a final judgment of a particularly serious crime," modifies the word "alien" and thus limits those aliens who may be determined to constitute a danger to the community to those who have been finally convicted of serious crimes. We agree with the Court of Appeals for the Eleventh Circuit that had Congress intended the reading Ramirez urges, it would have written the section with two coordinate clauses joined by a conjunction, *e.g.* "the alien has been convicted by a final judgment of a particularly serious crime *and* constitutes a danger to the community of the United States." *See Crespo-Gomez v. Richard*, 780 F.2d 932, 934 (11th Cir.1986) ("the statute sets forth a cause and effect relationship: the fact that the alien has committed a particularly serious crime makes the alien dangerous within the meaning of the statute."); *Zardui-Quintana v. Richard*, 768

F.2d 1213, 1222–1223 (11th Cir.1985) (Vance, J., concurring) (same).

Our decision in *Mahini* does not require a different result. In *Mahini* we said:

[T]he Board reasonably concluded that petitioner's convictions for possession of heroin with intent to distribute and for conspiracy to aid and abet the distribution of heroin were particularly serious. Moreover, because of heroin's deleterious effect on people, the Board did not err in ruling that the petitioner constituted a danger to the community within the meaning of section 243(h)(2)(B) of the Refugee Act.

779 F.2d at 1421. The court's articulation of the reason that it is reasonable for the BIA to equate conviction of possession of heroin with danger to the community does not translate into a requirement that the BIA couch its reasoning in the form of two separate fact findings.

In short, we hold it is reasonable for the BIA to interpret the statute as requiring only the factual finding of conviction of a particularly serious crime to support the determination of danger to the community.

B. *Weighing the Degree of Persecution*

■ Ramirez argues that the humanitarian concerns underlying the Refugee Act of 1980 mandate that the BIA should weigh the seriousness of his offense against the severity of the persecution he is likely to suffer before deciding whether he is entitled to relief. The United Nations High Commissioner for Refugees has stated that when an alien is considered ineligible for withholding because he has committed a serious nonpolitical crime outside the United States, 8 U.S.C. § 1253(h)(2)(C), it is "necessary to strike a balance between the nature of the offense presumed to have been committed by the applicant and the degree of persecution feared." United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status*, ¶ 156 (Geneva 1979). As we have previously noted, the *Handbook* provides some assistance in interpreting our immigration laws. *Hernandez-Ortiz v. INS*, 777 F.2d 509, 514 n. 3

(9th Cir.1985). However, we do not agree with Ramirez's view that the *Handbook's* standard for evaluating eligibility for withholding relief should be the same in a situation of a final conviction of a serious crime in the United States, section 243(h)(2)(B), as in a situation where there is reason to believe an alien committed a crime outside the United States, section 243(h)(2)(C). The BIA's rejection of this balancing approach is reasonable because Congress already struck the balance when it phrased the exception to withholding eligibility in mandatory rather than discretionary language. *Matter of Rodriguez-Coto*, Int. Dec. No. 2985 (BIA 1985). *See also Garcia-Mir v. Smith*, 766 F.2d 1478, 1487 n. 10 (11th Cir.1985) ("Both this court and the INS have previously rejected the balancing test.")

## CONCLUSION

The BIA properly refused to address the merits of Ramirez's claims of probable persecution. Because there was no error in the BIA's interpretation of section 243(h)(2)(B), the petition for review is DENIED.