**SUN MOON STAR ADVANCED POWER, INC., Sun Moon Star Group USA, Pu Dong Weng, Plaintiffs,**

v.

**Lois C. CHAPPELL, Director, Western Regional Adjudication Center, U.S. Immigration and Naturalization Service, Alan Nelson, Commissioner, U.S. Immigration and Naturalization Service, Thomas W. Simmons, Chief, U.S. Immigration and Naturalization Services Administrative Appeals Unit, Richard Thornburgh, Attorney General, Defendants.**

No. C–88–3500–FMS.

United States District Court, N.D. California.

Sept. 18, 1990.

---

Teresa A. Bright, Simmons & Ungar, San Francisco, Cal., for plaintiffs.

Stephen L. Schirel, Chief, Civ. Div., Susan L. Kamlet, Special Asst. U.S. Atty., for defendants.

## ORDER

FERN M. SMITH, District Judge.

### I. INTRODUCTION

The plaintiffs seek a judgment reversing a decision by the United States Immigration and Naturalization Service ("INS") denying a Petition for Prospective Immigrant Employee by Sun Moon Star Group, U.S.A. for Mr. Pu–Dong Weng (Mr. Weng). The defendants move to uphold this decision. This permanent immigrant visa would allow Mr. Weng to remain in the United States as a permanent resident alien. The INS' decision is based upon its determination that Mr. Weng's employer, United States-based Sun Moon Star Group U.S.A. is not an affiliate of the Taiwan-based Sun Moon Star Co., Ltd. Taiwan. Under the

relevant statute, 8 U.S.C. § 1153(a)(6), Mr. Weng cannot qualify for the intracompany transfer visa unless the United States and Taiwan Companies are determined to be affiliates.

The issues presented to the Court are: 1) whether the INS abused its discretion when it determined that under the current interpretation of the statute the two companies are not affiliates; and 2) whether the INS' interpretation of the term "affiliate" accurately reflects the intent of Congress in passing the statute.

## II. BACKGROUND

A. Procedural History

Plaintiff Pu–Dong Weng is a native and citizen of Taiwan who worked for Sun Moon Star Co., Ltd. in Taiwan between 1977 and 1986. On July 16, 1985 Sun Moon Star Ltd. filed a petition to have an L–1 (intracompany transferee) visa petition approved for Mr. Weng. That petition was approved on November 29, 1985 and was valid until November 28, 1988. Mr. Weng and his family thereafter entered the United States during January 1986 pursuant to his L–1 visa. Mr. Weng thereafter worked for the American group of companies affiliated with Sun Moon Star, Taiwan: American Sun Moon Star, Advanced Power, Inc., and Solstar.

In June 1987 plaintiff Advanced Power Inc. applied for a sixth preference visa pursuant to section 203(a)(6) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(6) by filing a Form I–140. A.A.R. 329.[1] That application was denied by the Western Adjudication Center on January 22, 1988. The denial stated that an affiliate relationship had not been established between the foreign employer, Sun Moon Star Co., Ltd., and the company for which Mr. Weng was then working, American Sun Moon Star. A.A.R. 326.

On June 23, 1988, the INS, through its Administrative Appeals Unit (AAU), dismissed plaintiffs' appeal from the January

22 denial. A.A.R. 26–28. The decision was based on two grounds. First, the INS found that Mr. Weng would not be employed in a qualifying executive or managerial capacity. Second, the INS found that Sun Moon Star U.S.A. (in 1988 the American affiliates merged into one entity) did not have the requisite affiliate relationship with the foreign employer. *Id.*

The plaintiffs then filed an action before this Court which subsequently remanded the matter to the INS after determining that the AAU had not considered all documents submitted by plaintiffs when it reached its decision. A.A.R. 16–17. Based on the new information the AAU concluded in October 1989 that plaintiff Weng would be employed in a qualifying capacity under the regulations. A.A.R. 6. The AAU again held that plaintiffs had not met their burden of showing an affiliate relationship between Sun Moon Star Group USA and Sun Moon Star Co. Ltd., Mr. Weng's previous employer in Taiwan. The AAU stated:

> The individuals involved in the two entities are not the same group of individuals. Before and after the reorganization, the petitioner's largest shareholder was and is a corporation which is not an individual and which is a separate legal entity from its shareholders. A corporation and its individual shareholders are, as it were, two separate legal entities. [case citations omitted] In addition, the individual owners do not own and control the same proportion of each entity.

A.A.R. 4–5.

The present action in this Court followed the October, 1989 decision.

This court retains jurisdiction under 28 U.S.C. § 1331.

B. Applicable Regulations

Plaintiffs seek to classify Mr. Weng's position as a "schedule A Occupation" as defined in 20 C.F.R. § 656.10(d)(1) which provides permanent visas for those aliens who have been admitted into the United States to work in a managerial or executive

---

1. All references to A.A.R. are to the Amended Administrative Record filed with the Court on

May 29, 1990.

capacity with the same international corporations with which they were continuously employed outside the United States for one year before they were admitted. Aliens seeking schedule A classification under this regulation must meet the requirements set out in the context of intracompany transferee or "L" visas instituted by Congress in 1970 under 8 U.S.C. § 1101(a)(15)(L), as stated in 20 C.F.R. § 656.22(f)(1). The intracompany transferee statute, 8 U.S.C. § 1101(a)(15)(L) affords visas to:

> an alien who immediately after preceding the time of application into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof ...

In 1987 the INS promulgated regulations at 8 C.F.R. § 214.2(*l*)(1)(ii)(L) defining an affiliate as:

> One of two subsidiaries both of which are owned and controlled by the same parent or individual or one of two legal entities owned and controlled by the same group of individuals, each individual owning and controlling approximately the same share or proportion of each entity.

On August 20, 1987 the INS issued a memorandum regarding "Implementation of Final L Regulations," published September 4, 1987 in *Interpreter Releases,* Vol. 64, No. 34, which further interpreted this regulation. It stated that "affiliate" included

> relationships where the same group of *individuals* (not companies) own and control approximately the same share or proportion of each entity. To establish an affiliate relationship, the exact same individuals must own the entities; adjudicators will have to use judgment in determining if the shares owned by each individual in each entity are almost the same. (emphasis in original)

Under the construction of the regulation set out in this memorandum, a determination of whether companies are affiliates depends upon finding that the companies are owned by the *exact* same individuals and excludes the possibility of indirect ownership of the affiliates by these individuals through a third company.

### C. Relevant Facts

The INS held that Sun Moon Star Group, U.S.A. was not an affiliate of Sun Moon Star Co., Ltd. Taiwan because the exact same individuals did not own the two companies and because the largest shareholder of the United States company, Hong Kong Consup, is not an individual.

The uncontested documents submitted with the pleadings reveal that Sun Moon Star USA is 40% owned by a holding company, Hong Kong Consup. The documents also show that members of the Weng family own both the United States and Taiwan companies as well as the holding company. Sun Moon Star Group USA is owned by the three Weng brothers, their two sisters, and the holding company, Hong Kong Consup. Sun Moon Star Co., Ltd. Taiwan, is owned by the five siblings and their parents. Hong Kong Consup is owned by the five siblings, their parents and the wives of two of the brothers. Prior to January 1, 1988 the United States company was three separate entities, American Sun Moon Star, Advanced Power, Inc. and Solstar. Advanced Power initially filed the petition for Mr. Weng.

### III. STANDARDS FOR REVIEW

■ Judicial review of INS decisions regarding individual petitions extends only to whether the decision was arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A); *See also Occidental Engineering Co. v. INS,* 753 F.2d 766, 768 (9th Cir.1985); *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir.1971).

■ Where only issues of statutory construction are present, however, INS decisions do not require this high degree of deference. Courts will review the INS' interpretation of a statute *de novo:*

> We review *de novo* an agency's interpretation of a statute. *Ramirez–Ramos v. INS,* 814 F.2d 1394, 1396 (9th Cir.1987). Although an agency's construction of a statute that it is charged with administering is entitled to some deference, we

keep in mind that the courts are the final arbiters of statutory interpretation. (citations omitted). Reviewing courts "must not rubber stamp ... administrative decisions that they deem inconsistent with a statutory mandate." *Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citations omitted) (we must reject an agency's interpretation that is inconsistent with the statute's meaning).

When interpreting a statute, our objective is to ascertain and enforce the intent of Congress.

*Purba v. INS,* 884 F.2d 516, 517 (9th Cir. 1989).

Following these standards, the first issue in the case, whether the INS correctly determined that the United States and Taiwan companies are not affiliates under the present construction of the statute, should receive a high degree of deference by this court under the arbitrary and capricious standard. The second issue, the INS construction of the statute through the definition of the term "affiliate," should receive *de novo* review in accordance with *Purba.*

## IV. ANALYSIS

A. *The INS' conclusion that the U.S. and Taiwan companies are not affiliates is not an abuse of discretion under the current interpretation of the statute.*

■ In promulgating 8 C.F.R. § 214.-2(*l*)(1)(ii)(L) and the August 20, 1987 interpretive memorandum the INS set out the standards for determining whether companies are affiliates under the statute permitting intracompany transferee visas. Under these standards the INS did not abuse its discretion when it denied Mr. Weng a visa.

Defendants point to three reasons why the INS' denial of the visa was not arbitrary, capricious or an abuse of discretion. First, the regulation and the accompanying interpretive memorandum require that the *exact* same group of individuals own the two companies claimed to be affiliates. Here, as defendants assert, Hong Kong

Consup owns 40% of the U.S. company but owns no part of the Taiwan company. In addition, although defendants do not mention it, the father and mother, Hsi–Hui Weng and Tsai Yu–Chih Weng, own stock in the Taiwan Companies but not the U.S. companies. Thus, the *exact* same individuals do not own each company. Defendants also claim that Judy Lee and Sherry Lin own stock in the United States company but not the Taiwan company. Plaintiffs point out, however, that defendants have overlooked the fact that these two sisters own stock in the foreign company under other names.

Second, defendants assert that an affiliate relationship does not exist between the companies because each individual must own approximately the same proportion of each entity to establish affiliation. Here, because the stockholders are not exactly the same and because Hong Kong Consup owns 40% of the United States company and none of the foreign entity, the defendant has concluded that the same individuals do not own the same share of each entity.

Finally, the defendant asserts that because the INS has interpreted the term "individuals" to exclude companies, the petition must be denied as Hong Kong Consup is not an individual within the requirements of the regulation.

Here, the INS' refusal to recognize the Weng brothers' indirect ownership through the holding company is central to the INS' decision to deny Mr. Weng the visa. Plaintiffs assert that if the fact of indirect ownership is disregarded, the three Weng brothers and their wives own a controlling interest in both the U.S. and Taiwan companies in approximately the same share, thus meeting the requirements of the statute and 8 C.F.R. § 214.2(*l*)(1)(ii)(L).

Since the three brothers own 60% of Hong Kong Consup, which owns 40% of Sun Moon Star USA, and as individuals they own another 29%, the three own a majority, controlling share of 53% of the Sun Moon Star USA. The three brothers own 52.50% of Sun Moon Star, Taiwan and 57.03% of the other two Taiwanese Companies, Ad-

vanced Power Industries and Vidar. Thus, these three individuals own and control all companies, if the fact of indirect ownership is disregarded.

In denying the visa petition to Mr. Weng, the INS followed policies set out in the interpretive memo of August 20, 1987 which does not allow "L" visas to be granted where one of the two affiliates owned by a group of individuals is owned in part through a holding company. The INS refused to look past the corporate status of the holding company, Hong Kong Consup, to the individual owners behind it. This refusal leads to an incongruous result; however, given the language of the interpretive memorandum, the decision by the appeals unit was not arbitrary, capricious or an abuse of discretion.

B. *The INS' rigid interpretation of the term "affiliate" in 8 U.S.C. § 1101(a)(15)(L) promulgated under the interpretive memorandum is neither consistent and longstanding nor does it reflect the intent of Congress.*

▪ In this case, the INS' construction of the statute was determinative in its denial of Mr. Weng's visa petition; therefore, the Court may review the policy set out in the interpretive memorandum *de novo. Purba, supra.* Also, courts may accord less deference to agency interpretations which are neither consistent nor longstanding. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 447 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987); *Bowen v. American Hospital Association,* 476 U.S. 610, 646 n. 34, 106 S.Ct. 2101, 2122 n. 34, 90 L.Ed.2d 584 (1986). In view of the fact that the INS has not always interpreted this statute consistently, and that the INS promulgated the interpretive memorandum and regulation in 1987, 17 years after the statute was enacted, the court should critically review the INS interpretive memorandum.

1. Inconsistent Interpretations

▪ The INS' refusal to recognize, as affiliates, entities which may be owned in-

directly by the same individuals and in which ownership interests may vary slightly is not consistent with its previous interpretation of the statute in the *Matter of Tessel, Inc.,* 17 I & N Dec. 631 (Acting Assoc. Comm.1981). There, as plaintiffs point out, the INS found that indirect ownership met the statutory requirement of the term "affiliate." In *Tessel,* a South African company owned 93% by the alien who was its chairman and a U.S. company owned 60% by the same alien were found to be affiliates. The court stated:

> Where there is a high percentage of ownership and common management between two companies, either directly *or through a third entity,* those companies are "affiliated" within the meaning of that term as used in section 101(a)(15)(L) of the Act.[2] (Emphasis added).

Plaintiffs reliance on *Tessel* is appropriate. Under *Tessel* the definition of affiliate, which does not consider indirect ownership to be determinative, the companies here would be considered affiliates. The same parties own a majority of both the foreign entity and the United States entity—though indirectly. The father, mother, brothers and sisters own Hong Kong Consup, and through Hong Kong Consup, as well as individually, these same parties own Sun Moon Star U.S.A. and Sun Moon Star Co., Ltd. Taiwan.

In addition, in *Tessel,* as here, the owner did not own the same proportionate share of the companies in question; he owned 93% of one and 60% of the other. Thus, the INS at that time did not require the exact same individuals to own and control the same proportion of the companies as does the August 20, 1987 interpretive memorandum. Were the INS to follow *Tessel,* the fact that various other family members own shares of the Taiwan and United States companies would be insignificant, so long as the same group controlled the majority of the stock in approximately the

---

**2.** § 101(a)(15)(L) of the Immigration and Naturalization Act is codified at 8 U.S.C. § 1101(a)(15)(L).

same amount, as the three Weng brothers do (see above).

Defendants' attempt to distinguish *Tessel* is not persuasive. They argue that because one person owned both affiliates in *Tessel,* the cases are dissimilar. This avoids the issue of indirect ownership. In *Tessel,* the INS directly stated that whether the ownership was direct or indirect did not bear upon the determination of affiliation.

Similarly, defendants' misplace their reliance on the *Matter of Del Mar Ben, Inc.,* 15 I & N Dec. 5 (Reg.Comm.1974), and *Matter of Aphrodite Investments Limited,* 17 I & N Dec. 530 (Comm.1980), to support their contention that the INS will not recognize indirect ownership because corporations are separate legal entities from their owners. In *Del Mar Ben,* the INS found that the small percentage of stock owned by the foreign entity in the domestic company did not create an affiliation between the companies. The INS reasoned that mere stock ownership is not sufficient to establish an affiliate relationship. Defendants seek to expand this decision to encompass the proposition that the INS will not look behind the corporate status of an entity to determine its ownership. This proposition is erroneous. *Tessel* limited *Del Mar Ben* to its facts, indicating that a high percentage of common ownership and control, not whether the company is owned through stock, determines the existence of affiliation.

Defendants also assert that the language in *Aphrodite* regarding the fact that a corporation is a separate legal entity requires the INS to regard corporations as separate from their owners for the purposes of determining affiliation. Again, they read this language too broadly. The language in *Aphrodite* merely reflects the legal status of the corporation, thus allowing the owner of the corporation to be considered an employee; it does not shed light on the correct definition of the term affiliate.

Further, as plaintiffs assert, the regulation itself, 8 C.F.R. § 214.2(*l*)(1)(ii)(L), does not require that indirect ownership of affiliates be prohibited or that the exact same individuals must own the entities to establish the requisite affiliation. Only the August 20, 1987 memorandum makes these stringent requirements obligatory. Thus, while not inconsistent with the regulation, these requirements are not necessitated by it and should be examined to determine whether they reflect the intent of Congress.

### 2. The Intent of Congress

Both plaintiffs and defendants look to the congressional record to determine whether the INS' interpretation of the statute reflects the intent of Congress in enacting 8 U.S.C. § 1101(a)(15)(L). Plaintiffs note that the intent of Congress in providing intracompany visas was to allow qualifying individuals to enter the country, not to burden their entry with overly technical regulations. Plaintiffs cite the hearings of the House Judiciary Committee on March 3, 1970, H.R.Rep. No. 851, 91st Cong., 2d Sess., Cong.Rec. 5730 (1970), U.S.Code Cong. & Admin.News 1970, p. 2750 where the Chairman of Subcommittee No. 1, Michael A. Feighan, speaks to the broad scope intended by Congress for the INS' interpretation of qualifying entities under the bill:

> The bill would facilitate temporary admission into the United States of executive, managerial and specialist personnel of international corporations, firms and other legal entities ... It is anticipated that the words "firm" and "legal entity" will be interpreted in the broad sense to include all bona fide forms of business organizations including partnerships, sole proprietorships, and labor organizations.[3]

**3.** Later, another court interpreting the intent of Congress in enacting the statute also noted the wide latitude to be accorded companies of differing legal or structural makeups seeking intracompany transfers:

> Congress intended that the legal status of the petitioning business not be a dispositive consideration in immigration proceedings. Otherwise, immigration decisions could hinge upon irrelevancies, such as whether the laws

As plaintiffs assert, the INS' current definition of the types of companies which can qualify to petition for intracompany transferee status for their employees does not reflect the stated intention of Congress that the INS interpret legal terms in a broad sense. The INS' restrictive requirements are far from the liberal definition of terms suggested by the Congressional record.

Defendants counter with language from the same Congressional Report indicating that "the class of persons eligible for such nonimmigrant visas is narrowly drawn and will be carefully regulated and monitored by the Immigration and Naturalization Service." H.R.Rep. No. 851, 91st Cong., 2d Sess., U.S.Code Cong. & Admin.News 1970, p. 2754 (1970). It is clear from this and other passages contained in defendants' brief that Congress contemplated only a narrow class of individuals would receive the "L" visas under the bill. This fact does not warrant the INS' highly technical and restrictive definition of the term "affiliate." Instead, to more accurately reflect Congress's intent, the Court must examine whether the United States company is a bona fide affiliate of the foreign company, using a less rigid interpretation of the regulation at 8 C.F.R. § 214.2(*l*)(1)(ii)(L).

The determination of affiliation should not depend upon such arbitrary factors as whether the U.S. company is owned indirectly through a holding company or whether the individual owners are absolutely identical as required by the August 20, 1987 interpretive memo.

### V. CONCLUSION

 For the foregoing reasons, the Court finds that plaintiff Sun Moon Star Group U.S.A. is affiliated with Sun Moon Star Co., Ltd. The Court GRANTS summary judgment for the plaintiffs and against the defendants. The decision of

the United States Immigration and Naturalization Service is reversed.

SO ORDERED.

---

of the country in which the petitioning business was organized favor corporations, or whether a certain form of organization under foreign laws was analogous to our concept of

a corporation. Congress acted to obviate the necessity of deciding such collateral issues. *Johnson–Laird, Inc. v. INS,* 537 F.Supp. 52, 54–55 (D.Ore.1981).