947 F.2d 949
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Peyman BAHADORI, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 90-70500.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 10, 1991.
Decided Oct. 30, 1991.
 
 Before SCHROEDER, LEAVY and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Peyman Bahadori ("Bahadori") petitions for review of the decision of the Board of Immigration Appeals ("BIA") to deny him asylum and withholding of deportation. Bahadori argues that his convictions for drug offenses do not render him ineligible for withholding of deportation, that he faces a clear probability of persecution in Iran because of his conversion from Islam to Christianity, and that the BIA abused its discretion by denying his application for asylum.
 
 
 3
 We grant the petition and remand.
 
 FACTUAL BACKGROUND
 
 4
 Peyman Bahadori entered this country from Iran on a non-immigrant student visa in 1978 at the age of fifteen. In 1981 he was charged with failing to leave when his visa expired, but did not appear for his hearing. Bahadori began attending services at the Church of Christ in Los Angeles in 1982 and was baptized as a Christian. Prior to that time Bahadori's religious status was uncertain. His father was Moslem and his mother was an Italian-born Catholic. As a child in Iran, Bahadori attended Catholic school and occasionally attended services with each parent.
 
 
 5
 Bahadori was convicted in 1986 of possession of cocaine for sale and possession of heroin. He was fined one-hundred and fifty dollars, sentenced to 3 years' probation, and ordered to serve 180 days in jail. According to Bahadori, he was arrested with two grams of cocaine and his experimentation with drugs took place during a traumatic divorce. In 1988, Bahadori pled guilty to stealing $1500 in money orders from a place of former employment, and his probation was revoked. Bahadori attended Christian religious services in prison and was baptized a second time in August of 1988.
 
 
 6
 Bahadori was issued a charge of deportability on April 19, 1989, and requested asylum and the withholding of deportation. Bahadori argued that as a convert to Christianity he would face religious persecution in Iran at the hands of the dominant Shiite sect. Bahadori also stated that two of his uncles had been high-ranking officials under the Shah and were executed by the revolutionary government. The revolutionary government forced Bahadori's father to resign from his position as president of a motor company and confiscated his family's property. After Bahadori's mother and brother visited him in the United States in 1979, his mother and two brothers were placed under house arrest for approximately four months. Bahadori has not been able to communicate with his family in Iran since 1984.
 
 
 7
 Although an authorized representative assisted Bahadori in preparing his claim, he appeared at his hearing pro se. The immigration judge expressed some reservations about the sincerity of Bahadori's religious conversion but found that Bahadori had a well-founded fear of religious persecution in Iran. The judge nonetheless denied asylum as a matter of discretion because Bahadori testified that he was innocent of the 1988 burglary, and the judge found this testimony highly incredible. The judge denied Bahadori the withholding of deportation because he concluded that Bahadori did not face a clear probability of persecution and that Bahadori's drug offenses were particularly serious crimes.
 
 
 8
 Bahadori appealed to the BIA. With the assistance of counsel, Bahadori presented more than 200 pages of additional evidence, including affidavits testifying to the genuine nature of his religious conversion and the fact that Iranian authorities would view him as an apostate. The BIA held that Bahadori was ineligible for the withholding of deportation because his drug convictions were per se particularly serious crimes. The BIA also found that Bahadori never actually converted from Islam to Christianity and thus faced no threat of persecution. Even if Bahadori could show a threat of persecution, however, the BIA held that asylum should be denied as a matter of discretion. Because the BIA found Bahadori ineligible for the withholding of deportation based on his drug convictions and ineligible for a discretionary grant of asylum, the BIA found no reason to remand Bahadori's claim for consideration of the new evidence presented on appeal.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 9
 We have jurisdiction under 8 U.S.C. § 1105a. Whether a given offense constitutes a "particularly serious offense" under 8 U.S.C. § 1253(h)(2) is a question of law that this court reviews de novo but with deference to the BIA's interpretation of the statute. Ramirez-Ramos v. INS, 814 F.2d 1394, 1396 (9th Cir.1987). This court reviews the factual findings underlying the BIA's decisions on granting or denying asylum and withholding of deportation under the "substantial evidence" test. Arteaga v. INS, 836 F.2d 1227, 1228 (9th Cir.1988). The ultimate denial of asylum is reviewed for abuse of discretion. Sanchez-Trujillo v. INS, 801 F.2d 1571, 1578 (9th Cir.1986). This court reviews the BIA's denial of a motion to reopen for abuse of discretion. Zacarias v. United States INS, 921 F.2d 844, 854 (9th Cir.1990), cert. denied, 111 S.Ct. 2008, 114 L.Ed.2d 96 (1991).
 
 DISCUSSION
 
 10
 A. Withholding of Deportation.
 
 
 11
 As a general rule the Attorney General may not deport an alien to a country where that person's life or freedom would be threatened. 8 U.S.C. § 1253(h)(1). This rule does not apply, however, if an alien has been convicted of a "particularly serious crime." 8 U.S.C. § 1253(h)(2)(B). The BIA found Bahadori ineligible for withholding of deportation because in the BIA's view, all drug trafficking offenses are per se "particularly serious crimes" so that the BIA "do[es] not need to examine the circumstances of the crime and the sentence imposed."[1] We disagree. The BIA's approach to drug trafficking crimes directly contradicts a recent decision of this court. Beltran-Zavala v. INS, 912 F.2d 1027, 1031-32 (9th Cir.1990). The petitioner in Beltran-Zavala was convicted of selling $10 of marijuana and sentenced to two years' probation. Without considering the factual circumstances of Beltran's conviction, the BIA concluded that he had committed a "particularly serious crime." We vacated and remanded, holding that the BIA must analyze the seriousness of a conviction on a case-by-case basis. 912 F.2d at 1032. We cited a previous BIA decision which listed the relevant factors to consider, which include: "the nature of the conviction, the circumstances and underlying facts of the conviction, [and] the type of sentence imposed." Id. (quoting In re Frentescu, 18 I. & N. Dec. 244, 247 (1982)).
 
 
 12
 Beltran-Zavala is consistent with our prior decisions upholding the BIA's determination that the drug offenses at issue were "particularly serious crimes." Ramirez-Ramos v. INS, 814 F.2d at 1396-97; Mahini v. INS, 779 F.2d 1419, 1421 (9th Cir.1986). In Mahini the BIA explicitly considered the circumstances of the conviction. 779 F.2d at 1421. The Ramirez-Ramos court, while stating that "this circuit has ratified the BIA's consistent view that convictions for drug possession and trafficking are particularly serious," 814 F.2d at 1397, did not consider whether the BIA would be justified in adopting a per se rule of seriousness for drug offenses, since that issue was not apparently raised before it.
 
 
 13
 The INS argues that Congress has now expressly determined that narcotics offenses are per se "particularly serious crimes." Immigration Act of 1990, Pub.L. No. 101-649, §§ 515(a)(2), 501(a)(2), 104 Stat. 4978, 5053, 5048. Thus, it says, the BIA must have been correct in reaching that conclusion before the new statute was enacted. That is a non sequitur. Our laws regarding the treatment of drug offenses are constantly changing. There simply is no reason to declare that this change validates the type of actions that we disapproved of in Beltran-Zavala.
 
 
 14
 B. Motion to Remand.
 
 
 15
 On appeal to the BIA, Bahadori presented various affidavits and other evidence in support of his claim that as a Christian he faces likely persecution in Iran. While the BIA noted that the presentation of additional evidence on appeal is ordinarily treated as a motion to remand, it found no necessity to so construe Bahadori's evidence. The BIA indicated that regardless of additional evidence regarding persecution, Bahadori's asylum application would be denied in the exercise of discretion, and that he was barred from withholding of deportation because of his drug convictions. On remand to the BIA it may in its discretion conclude that Bahadori is not barred from the withholding of deportation. In any event, the BIA should treat Bahadori's new evidence as a motion to remand to the IJ.
 
 
 16
 The requirements of a motion to remand are the same as a motion to reopen. Rodriguez v. INS, 841 F.2d 865, 867 (9th Cir.1987). The BIA may deny a motion to reopen on at least three independent grounds: that the movant has not established a prima facie case for the substantive relief sought; that the movant has failed to introduce previously unavailable, material evidence; or, in the case of asylum, that the movant is not entitled to the favorable exercise of discretion. INS v. Abudu, 485 U.S. 94, 104-105, 108 S.Ct. 904, 911-12, 99 L.Ed.2d 90 (1988).
 
 
 17
 As an explanation for his failure to produce the affidavits in support of his claim at the time of his hearing, Bahadori points out that he was in detention at the time of his hearing and that he appeared pro se. There is no indication that Bahadori's additional evidence is simply a tactic to delay deportation. See Abudu, 485 U.S. at 108, 108 S.Ct. at 913. Because the evidence was presented in connection with a timely appeal, Bahadori's previous lack of representation may be considered an adequate justification for the delay. At least it is not clear that an exercise of discretion by the BIA would lead to the denial of relief.
 
 
 18
 Bahadori's new evidence also may establish a prima facie case of eligibility for asylum and for the withholding of deportation. In a motion to reopen, the BIA "must accept the factual statements in the alien's affidavits as true," and the BIA "abuses its discretion if it fails to find a prima facie case established when the evidence in the affidavits satisfies the requirements for eligibility for substantial relief." Zacarias v. United States INS, 921 F.2d at 854 (citation omitted). "[W]here some of the evidence is developed at a hearing, the BIA is of course free to interpret that evidence free from inferences in favor of the moving party." Id.
 
 
 19
 The BIA found that on the unsupplemented record Bahadori faced no threat of religious persecution because he never actually converted to Christianity. The BIA based this finding on the fact that Bahadori's mother was Catholic and Bahadori was "by no means a practicing Moslem during the time he was in Iran." However, the BIA failed to consider whether Iranian authorities might impute a Moslem identity to Bahadori, regardless of his mixed religious heritage. We have held that an alien may establish a threat of persecution based upon ideas imputed to the alien by others. Beltran-Zavala, 912 F.2d at 1030; Desir v. Ilchert, 840 F.2d 723, 728 (9th Cir.1988); Lazo-Majano v. INS, 813 F.2d 1432, 1435 (9th Cir.1987).
 
 
 20
 It appears that upon a proper exercise of discretion Bahadori's case could be remanded to the immigration judge because the affidavits and other evidence presented on appeal to the BIA tend to establish a prima facie case that Bahadori faces a clear probability of persecution in Iran, which would entitle him to withholding of deportation. A good deal of Bahadori's new evidence describes the persecution of religious minorities in Iran and supports the Department of State's contention that the Shi'ite rulers of Iran regard apostasy as a "heinous crime punishable by death." The affidavit of Ebrahim Ghaffari states that as the child of a Muslim father, Bahadori will be regarded as a Muslim by Iranian authorities. Affidavits by Paula Garland, Rev. Darrell Sutton, and Sam Gaddis testify to the genuine nature of Bahadori's conversion to Christianity. Viewed in combination, this evidence tends to establish that Bahadori has committed what Iranian authorities regard as the heinous crime of apostasy. Were this conversion to be discovered, Bahadori evidently faces a clear probability of persecution.
 
 
 21
 That same evidence tends to show that Bahdori has a well-founded fear of persecution and is therefore eligible for a discretionary grant of asylum. 8 U.S.C. §§ 1101(a)(42)(A), 1158(a). The BIA found it unnecessary to consider the additional evidence presented on appeal, stating that it would nonetheless deny Bahadori's application for asylum as a matter of discretion. The BIA found that the negative factors of Bahadori's drug convictions, burglary conviction, and untruthfulness outweigh the favorable factors such as the hardship deportation would mean to his children, who are United States citizens, and Bahadori's "good and responsible, even commendable employment history." The BIA's stated reasons for refusing to exercise its discretion do not "evidence its consideration of all relevant factors." Mattis v. United States INS, 774 F.2d 965, 967 (9th Cir.1985). In particular, while the BIA stated that "deportation would be difficult" for Bahadori, the BIA did not specifically consider the grave danger that Bahadori might face in Iran as a perceived convert from Islam. See Castro-O'Ryan v. United States Dep't of Imm. and Naturalization, 847 F.2d 1307, 1314 (9th Cir.1988). The BIA abused its discretion by failing to weigh this potentially significant factor in Bahadori's favor. De La Luz v. INS, 713 F.2d 545, 545-46 (9th Cir.1983). Furthermore, because Bahadori's new evidence casts light on the magnitude of the danger he might face in Iran, this evidence is clearly relevant to the BIA's exercise of discretion.
 
 
 22
 The respondent finally argues that Bahadori faces no clear probability of persecution because he could effectively hide his conversion from religious authorities. While it is true that persons might avoid persecution by making sure that their unpopular ideas remain undiscovered, the government should not use this as a basis for deporting persons whose religious beliefs put them at risk. A person should not be placed between the Scylla of renunciation of his church and the Charybdis of martyrdom.
 
 CONCLUSION
 
 23
 Because the BIA erroneously concluded that all drug offenses are per se "particularly serious," we vacate the denial of withholding of deportation and remand the case so that the BIA may consider the nature and circumstances of Bahadori's convictions. The BIA also abused its discretion in denying Bahadori's application for asylum without weighing the danger Bahadori might face upon deportation to Iran. In light of the relevant evidence presented by Bahadori on appeal, the BIA should exercise its discretion regarding the remand of Bahadori's case to the Immigration Judge. We, therefore, grant the petition.
 
 
 24
 VACATED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 It is interesting that the immigration judge does not appear to have applied a per se rule. He said: "[T]he respondent [is] also barred because of the particularly serious crime of possession for sale of cocaine. However, this conviction is on the edge of that analysis (close to being the other way)...."