Daniel URSU, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE Respondent.

No. 99–70678.
I & NS No. A29–388–188.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 14, 2001.*

Decided Oct. 5, 2001.

1. Cal Gov't Code § 945.3 (2001).
* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before KOZINSKI and GOULD, Circuit Judges, and SCHWARZER,** Senior District Judge.

** The Honorable William W Schwarzer, Senior      United States District Judge for the Northern

MEMORANDUM ***

Daniel Ursu appeals a final order of the Board of Immigration Appeals (BIA) affirming an Immigration Judge's (IJ) decision to order him removed to Romania. We affirm.

Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our disposition.

Ursu entered the United States on October 2, 1990, with a six-month visitor visa. Ursu maintains that he filed an application for political asylum on October 19, 1990. The application does not appear in the record. No action was ever taken on the purported application. Ursu remained in the United States illegally.

On December 11, 1997, Ursu was convicted of DUI/Manslaughter, Fla. Stat. § 316.193(3), a second degree felony under Florida law, and sentenced to eighteen months of imprisonment. Ursu had driven while intoxicated and had struck and killed another driver.

After Ursu's release from prison, the Immigration and Naturalization Service (INS) sought to deport him on the bases that he had remained in the United States illegally, 8 U.S.C. § 1227(a)(1)(B) (1998),[1] and that he had been convicted of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii) (1998). After a hearing, the IJ ordered Ursu's removal. The BIA affirmed, holding that Ursu was deportable because he had committed an aggravated felony, id., and that he was ineligible for withholding of removal because, "having been convicted ... of a particular-

ly serious crime," he was a danger to the community, 8 U.S.C. § 1231(b)(3)(B)(ii) (1998). The BIA further held that the INS was not estopped from deporting him based on its alleged failure to act on his petition for asylum.

We review the issue of our jurisdiction de novo. See Sareang Ye v. INS, 214 F.3d 1128, 1131 (9th Cir.2000). We also review de novo the BIA's determination that Ursu is ineligible for withholding of removal; however, we accord considerable deference to the BIA's interpretation of the relevant statute. See Ramirez–Ramos v. INS, 814 F.2d 1394, 1396 (9th Cir.1987).

█ The BIA determined that Ursu had been convicted of an aggravated felony and was therefore deportable. Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), we have jurisdiction to review the BIA's order of removal only if Ursu was *not* convicted of an aggravated felony. See Sareang Ye, 214 F.3d at 1131; see also 8 U.S.C. § 1252(a)(2)(C) (1998). Because of our holding in United States v. Trinidad–Aquino, 259 F.3d 1140 (9th Cir.2001), the INS now concedes that Ursu was not convicted of an aggravated felony. We agree and hold that we have jurisdiction to review the BIA's removal order.

█ The BIA held that Ursu had been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(F) (1998), which defines an "aggravated felony" as "a crime of violence." Such a conviction would make him ineligible for asylum, 8 U.S.C. § 1158(b)(2)(B)(i) (1998), and

District of California, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. We cite the 1998 version of the United States Code throughout because that version was in effect when the INS initiated removal proceedings against Ursu in February 1998, and the relevant statutes have been frequently amended.

would preclude our review, 8 U.S.C. § 1252(a)(2)(C) (1998). The court in *Trinidad–Aquino* held that the California crime of driving under the influence with injury to another, Cal. Veh.Code § 23153, was not an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) (1998), *i.e.*, that it was not a crime of violence, because it could be committed with a *mens rea* of negligence. *Trinidad–Aquino*, 259 F.3d at 1145. As with the California statute at issue in *Trinidad–Aquino*, a person can violate section 316.193(3) under Florida law by acting with a *mens rea* of negligence. *See generally State v. Van Hubbard*, 751 So.2d 552 (Fla.1999). We conclude that DUI/Manslaughter under Florida law is not an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(F) (1998), and that therefore 8 U.S.C. § 1252(a)(2)(C) (1998) does not preclude our review.

■ We turn to the question of whether DUI/Manslaughter is a "particularly serious crime." If it is, then Ursu is ineligible for asylum under 8 U.S.C. § 1158(b)(2)(A)(ii) (1998), and ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii) (1998) .[2] We grant the BIA's interpretation of the term deference because it is the agency charged with enforcing the statute. *See Ramirez–Ramos*, 814 F.2d at 1396.

■ The determination of whether a crime qualifies as particularly serious requires an examination of "the nature of the conviction, the type of sentence imposed,

and the circumstances and facts underlying the conviction." *Mahini v. INS*, 779 F.2d 1419, 1421 (9th Cir.1986). Here, the BIA determined that the crime was particularly serious in light of the facts that Ursu had caused the death of another human being and that he was so intoxicated that he failed to realize that he had injured someone and continued to drive until his car became disabled. The BIA emphasized that the seriousness of the crime of driving under the influence and the substantial risk of harm from that behavior have been widely recognized.

The BIA's holding in the case before us is thus consistent with its prior decisions, and is entitled to our deference, provided that it reflects a reasonable interpretation of the statute. *See, e.g., Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 809 (9th Cir.1989). Given that Ursu caused the death of another human being and that he was so impaired that he continued to operate his vehicle without realizing what he had done, we agree with the reasonableness of the BIA's decision that his crime was particularly serious. We affirm the BIA's holding that Ursu is not entitled to withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii) (1998).

■ Finally, we turn to Ursu's argument that INS should be estopped from deporting him. Even leaving aside the formidable barriers to bringing an estoppel claim against a United States government agency, *see, e.g., Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir.2000), we cannot

---

**2.** 8 U.S.C. § 1158(b)(2)(A)(ii) (1998) provides that the Attorney General does not have the power to grant asylum if the "alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii) (1998) provides that withholding of removal is not available when "the alien, having been convicted by a final judgment of a particularly serious crime is a

danger to the community of the United States." The BIA has consistently viewed the commission of a "particularly serious crime" itself as signifying that petitioner constitutes a danger to the community. *See, e.g., In re S–S–*, 1999 BIA LEXIS 1, at *23–24, Interim Decision 3374 (1999); *see also Ahmetovic v. INS*, 62 F.3d 48, 52 (2d Cir.1995); *Ramirez–Ramos*, 814 F.2d at 1397.

evaluate Ursu's estoppel claim because his asylum application is not in the record. The immigration laws explicitly provide that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A) (1998). *See also Fisher v. INS,* 79 F.3d 955, 963 (9th Cir. 1996) (en banc). Because no evidence of Ursu's 1990 asylum application is before us, even if we assume Ursu did file such an application, we cannot properly on this record determine the merits of his estoppel claim.

AFFIRMED.